UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL THOMAS,<br><br>            Plaintiff,<br><br>    v.<br><br>CHRISTIAN PFEIFFER, et al.<br><br>            Defendants. | No.  1:23-cv-01232-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANT'S EXHAUSTION MOTION FOR SUMMARY JUDGMENT BE GRANTED/DENIED<br><br>(ECF No. 26) |

Plaintiff is proceeding pro se in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant's exhaustion motion for summary judgment, filed December 16, 2024.

**I.**

**BACKGROUND**

This action is proceeding against Defendant Palomino for deliberate indifference to a serious medical need in violation of the Eighth Amendment.  (ECF No. 17.)

On July 15, 2024, Defendant Palomino filed an answer to the operative complaint.  (ECF No. 21.)

On August 16, 2024, the Court issued the discovery and scheduling order.  (ECF No. 25.)

1

1   On December 16, 2024, Defendant filed the instant exhaustion motion for summary

2   judgment.  (ECF No. 26.)  Plaintiff filed an opposition on January 10, 2025, and Defendant filed a

3   reply on January 24, 2025.[1]  (ECF Nos. 29, 30.)

**II.**

**LEGAL STANDARD**

**A.     Statutory Exhaustion Requirement**

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such

administrative remedies as are available" before commencing a suit challenging prison

conditions."   42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An

inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").

Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies

persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there

are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v.

Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532

U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter

v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by

the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and

unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing

Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of

raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca,  747 F.3d

1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of

the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at

1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they

are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the

---

[1] On January 6, 2025, Defendant filed a motion to stay discovery and modify the scheduling order, which was granted on January 7, 2025.  (ECF Nos. 27, 28.)

1  light most favorable to the plaintiff, shows he failed to exhaust.  Id.

2       **B.**    **Summary Judgment Standard**

3       Any party may move for summary judgment, and the Court shall grant summary judgment

4  if the movant shows that there is no genuine dispute as to any material fact and the movant is

5  entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino,

6  747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each

7  party's position, whether it be that a fact is disputed or undisputed, must be supported by (1)

8  citing to particular parts of materials in the record, including but not limited to depositions,

9  documents, declarations, or discovery; or (2) showing that the materials cited do not establish the

10  presence or absence of a genuine dispute or that the opposing party cannot produce admissible

11  evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may

12  consider other materials in the record not cited to by the parties, although it is not required to do

13  so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031

14  (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

15       The defendants bear the burden of proof in moving for summary judgment for failure to

16  exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available

17  administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.

18  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come

19  forward with evidence showing that there is something in his particular case that made the

20  existing and generally available administrative remedies effectively unavailable to him."  Id.  "If

21  the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to

22  exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However,

23  "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather

24  than a jury should determine the facts."  Id.

25       In arriving at this Findings and Recommendation, the Court carefully reviewed and

26  considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

27  facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of

28  reference to an argument, document, paper, or objection is not to be construed to the effect that

1    this Court did not consider the argument, document, paper, or objection. This Court thoroughly

2    reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.

### DISCUSSION

**A.  Allegations of Operative Complaint**

At all times relevant to this case, Plaintiff was housed at Kern Valley State Prison

("KVSP").  Plaintiff has four herniated lumbar discs, spondylosis, annular fissure, spinal stenosis,

claudication, neural foraminal narrowing, and nerve impingement at the L5 nerve root.  Plaintiff

also has five bulging cervical discs, neural foraminal stenosis, and central canal narrowing.  This

causes Plaintiff to have chronic and acute pain and recurring episodes of debilitating spasms.  The

episodes occur with or without warning, with varying frequency, and last for varying durations-

from several minutes to several days.

Since its onset in 1994, Plaintiff's deteriorating condition has been confirmed via six

MRIs: (1) 2000 one herniated lumbar disc (L4-5) with suspected L5 nerve root impingement; (2)

2008 two herniated lumbar discs (L4-5, L5-S1), neural canal narrowing with appreciable L4

nerve impingement and suspected L5 nerve impingement; (3) 2014 two herniated lumbar discs

(L3-5), trefoil canal/stenosis with claudication, multilevel degenerative disc disease, mild thecal

sac effacement, L5 nerve root impingement, left lower extremity radiculitis; (4) 2019 four

herniated lumbar discs (L2-5, L5-S1), moderate multilevel neural foraminal narrowing,

osteophyte complex, annular fissure, thecal sac compression; (5) 2021 broad lumbar disc bulge

(ZL4-5), broad disc protrusion and severe foraminal stenosis (L5-S1); and (6) 2021 five bulging

cervical discs, foraminal stenosis, and central canal narrowing.

From 2000 through 2015, CDCR treated Plaintiff's pain with various medications and

Toradol shots.  On December 18, 2015, Plaintiff was transferred to KVSP. At that time, he had

two herniated discs.

On February 26, 2019, Plaintiff was called to the medical clinics in response to the CDCR

7362 submitted by the appeals coordinator.  Plaintiff could not walk and other prisoners had to

assist him there.  Plaintiff was met by Defendant Palomino.  Instead of even attempting to help

1  Plaintiff in any way, Defendant Palomino spent the entire few minutes berating him about having

2  filed an inmate grievance.  Defendant Palomino then told Plaintiff to leave the clinic and said the

3  doctor would see him in two weeks.  However, Plaintiff was never called back.

4  On March 19, 2019, Plaintiff was called to the clinic.  Defendant Palomino said Plaintiff

5  hadn't yet seen the doctor because Rafanan-who Defendant Palomino said was a "trainee"-had

6  forgotten to submit Plaintiff's doctor referral on February 26, 2019.   Defendant Palomino

7  ordered Plaintiff to leave the clinic and said he would be seen by the doctor in two weeks.  This

8  time Plaintiff refused to leave without being helped.  After a tense standoff with both medical and

9  custody staff, Defendant Palomino eventually relented and agreed to call and get Plaintiff a

10  Toradol shot for the first time at KVSP.

11  On May 6, 2019, Plaintiff was at physical therapy and couldn't participate due to back

12  pain.  He requested a Toradol shot for the pain.  At the A yard clinic, Defendant Palomino and

13  another non-defendant nurse witnessed Plaintiff in obvious pain and refused to help him.  They

14  told him they could not see him until he submitted a formal health care request.  On May 7, 2019,

15  Plaintiff was called to the A yard clinic where he met with Defendant Palomino.   Defendant

16  failed to examine Plaintiff and sent him to the Triage Treatment Area ("TTA") for a Toradol shot

17  without an examination.

18  **B.    Statement of Undisputed Facts[2]**

19  1.    Plaintiff is a prisoner, currently in federal custody at the Minnehaha County Jail in

20  Sioux Falls, South Dakota.  (First Amended Complaint ("FAC"), ECF No. 16 at 6.1.)[3]

21  2.    At all times relevant to the allegations in the Complaint, Plaintiff was incarcerated

22  the KVSP.  (FAC at 6.)

23  3.    Plaintiff was housed at KVSP from approximately 2015 to October 2023.

24  (Declaration of L. Macfarlane ("Macfarlane Decl.") ¶ 2, Exhibit D, Plaintiff's External

25  Movement History.)

26  4.    On October 24, 2023, Plaintiff left KVSP with the US Marshal Service.

27  [2] Hereinafter referred to as "UF."

28  [3] All page references are to the page numbers assigned by the ECF system.

1  (Macfarlane Decl. ¶ 2, Ex. D.)

2  5.     Plaintiff did not return to California Department of Corrections and Rehabilitation

3  ("CDCR") custody.  (Macfarlane Decl. ¶ 2, Ex. D.)

4  6.     At all times relevant to this action, Defendant was a registered nurse at KVSP.

5  (ECF No. 21, ¶ 3.)

6  7.     Plaintiff initiated this action on August 18, 2023, while he was a California inmate

7  at KVSP.  (ECF No. 1.)

8  8.     Plaintiff filed the operative First Amended Complaint on April 11, 2024, while he

9  was a prisoner held in federal custody.  (FAC at 6.)

10  9.     Since August 1, 2008, health care grievances involving medical, dental, and

11  mental health services for incarcerated persons within the jurisdiction of the CDCR have been

12  processed by California Correctional Health Care Services (CCHCS), under the Office of the

13  Federal Receiver appointed in the class action litigation regarding prison health care, Plata v.

14  Newsom, U.S. District Court for the Northern District of California, Case No. 3:01-cv-01351.

15  (Declaration of D. Gouldy ("Gouldy Decl.") at ¶ 1.)

16  10.    The Health Care Correspondence and Appeals Branch ("HCCAB") is the branch

17  responsible for statewide oversight of health care grievances submitted by the incarcerated adult

18  population.  (Gouldy Decl. at ¶ 1.)

19  11.    Plaintiff's claims against Defendant arise from alleged interactions between them

20  at the KVSP A yard medical clinic that took place between February 2019 to May 2019.  (FAC at

21  9-12.)

22  12.    California Code of Regulations (CCR) Title 15, §§ 3999.225 – 3999.237 governs

23  the health care grievance process.[4]  (Gouldy Decl. at ¶ 3.)

24  13.    Under these regulations, incarcerated persons may grieve issues regarding health

25  care policies, decisions, actions, conditions, or omissions using a CDCR 602 HC, Health Care

26  Grievance form.  (Gouldy Decl. at ¶ 3; Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227(a) (2019).)

27

28  [4] From September 1, 2017 to June 30, 2019, these regulations were in effect as §§3087-3087.12. They were renumbered without regulatory effect to become §§3999.225-3999.237 on July 1, 2019.

14.     A health care grievance describes a specific complaint related to the inmate's health care which they believe has a material adverse effect on their health or welfare.  (Cal. Code Regs., tit. 15, § 3999.227(a).)

15.     In their health care grievance, the inmate must document clearly and coherently all information known and available to them regarding the issue, including any involved staff member's last name, first initial, title or position and the dates and description of their involvement.  (Cal. Code Regs., tit. 15, § 3999.227(g)(1).)

16.     If the inmate does not have information to identify involved staff member(s), the inmate must provide any other available information that may assist in processing the health care grievance.  (Cal. Code Regs., tit. 15, § 3999.227(g)(2).)

17.     Health care grievances are subject to two levels of review.  (Gouldy Decl. at ¶ 3; Cal. Code Regs. tit. 15, §§ 3999.226(a)(1).)

18.     Health care grievances are processed at the institutional level by Health Care Grievance Offices ("HCGO") at each institution and health care grievance appeals are processed at the headquarters level by the HCCAB, if requested by the incarcerated person.  (Gouldy Decl. at ¶ 3; Cal. Code Regs. tit. 15, §§ 3999.226(a)(1).)

19.     The institutional level is for initial clinical/administrative review of health care grievances.  (Cal. Code Regs., tit. 15, § 3999.228(a).)

20.     After an inmate receives a response from the Health Care Grievances Offices at the institutional level, if the inmate is dissatisfied with that disposition, the inmate may appeal the disposition by completing and signing CDCR 602 HC Section B and submitting the health care grievance package to the Health Care Correspondence Appeals Branch ("HCCAB").  (Cal. Code Regs., tit. 15, § 3999.229(a).)

21.     The inmate must submit the appeal to the headquarters level within 30 calendar days plus five calendar days for mailing from the date noted on CDCR 602 HC in the "date closed and mailed/delivered to patient" section on page 1 of 2.  (Cal. Code Regs., tit. 15, § 3999.229(a).)

22.     The headquarters level review with HCCAB constitutes the final disposition of a

7

1    health care grievance and exhausts administrative remedies.  (Cal. Code Regs., tit. 15, §

2    3999.230(h).)

3          23.    Health care grievances are subject to a headquarters disposition before

4    administrative remedies are deemed exhausted.  (Gouldy Decl. at ¶ 3; Cal. Code Regs. tit. 15, §

5    3999.226(g).)

6          24.    Plaintiff was called to the A yard medical clinic on February 26, 2019, in response

7    to a healthcare request form ("7362 Form") to address Plaintiff's back pain.  (FAC at 9.)

8          25.    During the February 26, 2019 appointment, Defendant allegedly refused to provide

9    medical care.  (FAC at 9.)

10          26.    On March 18, 2019, Plaintiff submitted Health Care Grievance log number KVSP

11    HC 19000271 ("Log No. 271") to report the issues he experienced during the February 26, 2019

12    appointment and to report that he had not been seen by a doctor for his back pain.  (Gouldy Decl.

13    at ¶ 7, Exhibit B, Plaintiff's Health Care Grievance Log No. KVSP HC 19000271 ("Ex. B").)

14          27.    Grievance Log No. 271 was received at the institutional level on March 26, 2019.

15    (Gouldy Decl. at ¶ 7, Ex. B.)

16          28.    The institution issued an institutional level response with a disposition of "No

17    Intervention" on May 28, 2019, and delivered it to Plaintiff.  (Gouldy Decl. at ¶ 7, Ex. B.)

18          29.    The institutional level response included Plaintiff's original CDCR 602 HC and

19    page one noted that the "date closed and mailed/delivered to grievant" was May 28, 2019.

20    (Gouldy Decl., Ex. B.)

21          30.    Pursuant to the applicable regulations, if Plaintiff was dissatisfied with the

22    institutional level disposition, Plaintiff had 30 calendar days plus five calendar days for mailing

23    from May 28, 2019, to appeal the institutional disposition to the headquarters level with HCCAB.

24    (Cal. Code Regs. tit. 15, § 3999.229(a).)

25          31.    There is no record that Plaintiff submitted grievance Log No. 271 for headquarters

26    level review.  (Gouldy Decl. at ¶ 7.)

27          32.    Plaintiff submitted health care grievance log number KVSP HC 19000529 ("Log

28    No. 529") on June 5, 2019.  (Gouldy Decl. at ¶ 8.)

33.    This grievance documented events that Plaintiff alleges took place on May 6, 2019 and May 7, 2019, including that at the A yard medical clinic, Defendant and another nurse refused to see Plaintiff and told him to fill out a 7362 Form and they would see him the next day, and that Plaintiff received a Toradol shot on May 7, 2019.  (Gouldy Decl. at ¶ 8, Exhibit C, Plaintiff's Health Care Grievance Log No. KVSP HC 19000529 ("Ex. C").)

34.    This grievance was received at the institutional level on June 11, 2019.  (Gouldy Decl. at ¶ 8, Ex. C.)

35.    The institution issued an institutional level response with a disposition of "No Intervention" on July 15, 2019, and delivered it to Plaintiff.  (Gouldy Decl. at ¶ 8, Ex. C.)

36.    The institutional level response included Plaintiff's original CDCR 602 HC and on page one noted that the "date closed and mailed/delivered to grievant" was July 15, 2019. (Gouldy Decl., Ex. C.)

37.    There is no record that Plaintiff submitted grievance Log No. 529 for headquarters level review.  (Gouldy Decl. at ¶ 8.)

38.    Plaintiff's First Amended Complaint alleges that he interacted with Defendant on February 26, 2019, March 19, 2019, May 6, 2019, and May 7, 2019.[5]  (FAC at 9-12.)

39.    Plaintiff exhausted administrative remedies for other unrelated health care grievances prior to the incidents in question, in 2018, and later in the same year, 2019, by submitting a health care grievance at the institutional level and then appealing the institutional level decision to the second, and final, level of review at headquarters.  (Gouldy Decl., Ex. A, Plaintiff's Health Care Appeals and Risk Tracking System History.)

40.    Plaintiff's Health Care Appeals and Risk Tracking System ("HCARTS") shows that Plaintiff submitted approximately 40 health care grievances between July 2018 and August 2023.  (Gouldy Decl., Ex. A.)

41.    Plaintiff exhausted administrative remedies by appealing the institutional level decision to headquarters for at least 20 of those health care grievances between 2018 and 2023.

---

[5] Defendant's motion for summary judgment alleged that Plaintiff failed to exhaust the administrative remedies for his claims that took place on May 7, 2019.  However, Plaintiff's opposition correctly states that he does not have any claims against Defendant that arose on May 7, 2019.  (ECF No. 29 at 9.)

1   (Gouldy Decl., Ex. A.)

2          42.     Plaintiff accessed the health care grievance process many times between 2018 and

3   2023.  (Gouldy Decl., Ex. A.)

4          43.     Between July 2018 and August 2023, Plaintiff submitted approximately 40 health

5   care grievances at the institutional level at KVSP. Plaintiff received institutional level dispositions

6   for all of them. Plaintiff appealed at least 20 of the institutional level responses for headquarters

7   level review.  (Gouldy Decl., Ex. A.)

8          44.     Plaintiff appealed institutional level decisions in 2018, prior to his grievances

9   related to this action, and later in 2019, the same year as his grievances related to this action.

10  (Gouldy Decl., Ex. A.)

11         **C.      Description of California Administrative Grievance Process**

12         Since August 1, 2008, health care grievances involving medical, dental, and mental health

13  services for incarcerated persons within the jurisdiction of the CDCR have been processed by

14  CCHCS, under the Office of the Federal Receiver appointed in the class action litigation

15  regarding prison health care, Plata v. Newsom, U.S. District Court for the Northern District of

16  California, Case No. 3:01-cv-01351. (UF No. 9.) The HCCAB is the branch responsible for

17  statewide oversight of health care grievances submitted by the incarcerated adult population. (UF

18  No. 10.)

19         Plaintiff's claims against Defendant arise from alleged interactions between them at the

20  KVSP A yard medical clinic that took place between February 2019 to May 2019. (UF No. 11.)

21  CCR Title 15, §§ 3999.225 – 3999.237 governs the health care grievance process. (UF No. 12.)

22  Under these regulations, incarcerated persons may grieve issues regarding health care policies,

23  decisions, actions, conditions, or omissions using a CDCR 602 HC, Health Care Grievance form.

24  (UF No. 13.) A health care grievance describes a specific complaint related to the inmate's health

25  care which they believe has a material adverse effect on their health or welfare. (UF No. 14.) In

26  their health care grievance, the inmate must document clearly and coherently all information

27  known and available to them regarding the issue, including any involved staff member's last

28  name, first initial, title or position and the dates and description of their involvement. (UF No.

15.) If the inmate does not have information to identify involved staff member(s), the inmate must provide any other available information that may assist in processing the health care grievance. (UF No. 16.)

Health care grievances are subject to two levels of review. (UF No. 17.) Health care grievances are processed at the institutional level by HCGO at each institution and health care grievance appeals are processed at the headquarters level by the HCCAB, if requested by the incarcerated person. (UF No. 18.) The institutional level is for initial clinical/administrative review of health care grievances. (UF No. 19.) After an inmate receives a response from the Health Care Grievances Offices at the institutional level, if the inmate is dissatisfied with that disposition, the inmate may appeal the disposition by completing and signing CDCR 602 HC Section B and submitting the health care grievance package to the HCCAB. (UF No. 20.) The inmate must submit the appeal to the headquarters level within 30 calendar days plus five calendar days for mailing from the date noted on CDCR 602 HC in the "date closed and mailed/delivered to patient" section on page 1 of 2. (UF No. 21.) The headquarters level review with HCCAB constitutes the final disposition of a health care grievance and exhausts administrative remedies. (UF No. 22.) Health care grievances are subject to a headquarters disposition before administrative remedies are deemed exhausted. (UF No. 23.)

### C.    Analysis of Defendant's Motion

As stated above, Plaintiff claims against Defendant Palomino arise from alleged interactions between them at the KVSP A yard medical clinic that took place between February 2019 to May 2019.[6]

Defendant argues that Plaintiff submitted grievances related to some, but not all, of his

---

[6] In his opposition, Plaintiff attempts to add allegations about interactions that allegedly took place between Plaintiff and Defendant between January 12, 2019 and February 26, 2019. It appears Plaintiff is attempting to allege additional instances when Defendant denied care to Plaintiff to bolster his argument that Defendant engaged in a pattern of denying care to Plaintiff and that this led Plaintiff to fear retaliation for filing grievances because of the possibility of future denial of care. Plaintiff cannot oppose summary judgment by raising grounds not in issue under the pleadings. Wasco Products, Inc. v. Southwall Techs., Inc., 435 F.3d 989, 991 (9th Cir. 2006) (where defendant moved for summary judgment on statute of limitations grounds, plaintiff could not oppose by raising grounds for tolling statute that plaintiff had not pleaded in the complaint). Regardless, as discussed below, Plaintiff does not identify any specific threat that would prevent an inmate of ordinary firmness from filing a grievance. Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 792 (9th Cir. 2018).

claims at the first level of review but failed to pursue any of the grievances to the second level of review, and his claims are barred by the PLRA.

Here, there is not dispute that there was an available administrative grievance process at KVSP during the relevant time frame. (UF 13.)  Further, it is undisputed that on March 18, 2019, Plaintiff submitted Health Care Grievance Log No. 271 to report the issues he experienced during the February 26, 2019 appointment and to report that he had not been seen by a doctor for his back pain.  (UF 26.)  Grievance Log No. 271 was received at the institutional level on March 26, 2019.  (UF 27.)  The institution issued an institutional level response with a disposition of "No Intervention" on May 28, 2019, and delivered it to Plaintiff.  (UF 28.)  The institutional level response included Plaintiff's original CDCR 602 HC and page one noted that the "date closed and mailed/delivered to grievant" was May 28, 2019.  (UF 29.)  There is no record that Plaintiff submitted grievance Log No. 271 for headquarters level review.  (UF 31.)

Plaintiff submitted health care grievance log number KVSP HC 19000529 ("Log No. 529") on June 5, 2019.  (UF 32.)  This grievance documented events that Plaintiff alleges took place on May 6, 2019 and May 7, 2019, including that at the A yard medical clinic, Defendant and another nurse refused to see Plaintiff and told him to fill out a 7362 Form and they would see him the next day, and that Plaintiff received a Toradol shot on May 7, 2019.  (UF 33.)  This grievance was received at the institutional level on June 11, 2019.  (UF 34.)  The institution issued an institutional level response with a disposition of "No Intervention" on July 15, 2019, and delivered it to Plaintiff.  (UF 35.)  The institutional level response included Plaintiff's original CDCR 602 HC and on page one noted that the "date closed and mailed/delivered to grievant" was July 15, 2019.  (UF 36.)  There is no record that Plaintiff submitted grievance Log No. 529 for headquarters level review.  (UF 37.)

    1.    <u>Log Nos. 271 and 529</u>

In Log No. 271, Plaintiff reported the issues he experienced during the February 26, 2019 appointment and that he had not been seen by a doctor for his back pain.  (UF 26.)  The appeal was denied at the institutional level with no intervention.  (UF 28.)

In Log No. 529, Plaintiff alleged that on May 6, 2019, Defendant and another nurse

12

1    refused to give him a Toradol shot and told him to submit a 7362 form and he would be seen the

2    next day.  (UF 33.)  Plaintiff received a Toradol shot the following day on May 7, 2019.  (Id.)

3    The appeal was denied at the institutional level with no intervention.  (UF 34.)

4         Plaintiff does not dispute that he did not pursue these grievances through all levels of

5    review.  (ECF No. 29 at 22-23.)  Rather, Plaintiff argues that by the time prison officials rendered

6    a decision on May 28, 2019, he had already been seen for back pain at least four times, received

7    Toradol shots at least five times, received a lumbar MRI, received a wheelchair and

8    accommodation, and received physical therapy.  (Id. at 6, 25-26.)  Thus, Plaintiff contends that he

9    received what was requested and no further relief was available.  (Id. at 6, 21.)  With regard to

10   Log No. 529, Plaintiff argues that he did not receive a Toradol shot until May 7, 2019.  (ECF No.

11   29 at 3.)

12        In response, Defendant argues "that there was still relief available to Plaintiff and he was

13   not and could not have been satisfied by the relief he supposedly received."  (ECF No. 30 at 3.)

14   "At some point between May 7 and May 17, 2019, Plaintiff and Defendant Palomino had a

15   productive discussion wherein the following agreement was reached: (a) Defendant Palomino

16   would no longer make Plaintiff wait when requesting Toradol shots for emergency situations of

17   acute pain but would instead provide immediate treatment without prior submission of a CDCR

18   7362; (b) Plaintiff would not request Toradol shots excessively but rather only when absolutely

19   necessary; (c) Per Defendant Palomino's request, Plaintiff would keep Defendant Palomino

20   informed (from his cell) of his condition so that she could judge if it was worsening to the point

21   that she needed to call him to the medical clinic on her own, i.e., without Plaintiff's specific

22   request; and (d) to spare Plaintiff the pain and suffering of fruitless treks to and from the A-yard

23   medical clinic, if/when Plaintiff did submit CDCR 7362 forms solely for the purpose of informing

24   Defendant Palomino of his condition, she would only unilaterally call Plaintiff to the A-yard

25   medical clinic if it were to receive actual medical treatment—i.e., a Toradol shot."  (ECF No. 29

26   at 3-4.)

27        As set forth above, health care grievances are subject to two levels of review-institutional

28   level review and headquarters level review.  (UF 17.)  Thus, in order to exhaust his administrative

1    remedies, Plaintiff was required to proceed through both levels of review and receive a

2    disposition at the second, and final, level of review with HCCAB. (UF Nos. 12, 17-23.)  In both

3    Log Nos.  271 and 529, the institutional level responses specifically advised Plaintiff that if he

4    was dissatisfied with the response, he should submit the entire health care grievance package for

5    headquarters' level review.  (Gouldy Decl., Exs. B & C.)  In addition, it was noted that the

6    headquarters' level review constitutes the final disposition on the health care grievance and

7    exhausts the administrative remedies.  (Id.)  Nonetheless, Plaintiff did not pursue either Log Nos.

8    271 or 529 through all levels of the available grievance process as required.

9        The United States Supreme Court recognized "three situations in which an administrative

10    remedy is unavailable: (1) 'when (despite what regulations or guidance materials may promise) it

11    operates as a simple dead end—with officers unable or consistently unwilling to provide any

12    relief to aggrieved inmates'; (2) if it is 'so opaque that it becomes, practically speaking, incapable

13    of use'; and (3) 'when prison administrators thwart inmates from taking advantage of a grievance

14    process through machination, misrepresentation, or intimidation.'" Fordley v. Lizarraga, 18 F.4th

15    344, 351 (9th Cir. 2021) (citing Ross v. Blake, 578 U.S. 632, 633-34 (2016)).

16        Here, none of the circumstances rendered administrative remedies unavailable, and

17    Plaintiff is not excused from the exhaustion requirement. At all relevant times, CDCR, CCHCS,

18    and KVSP had an administrative remedy process available to Plaintiff. Plaintiff's use of the

19    health care grievance process related to some of his claims in this action demonstrates that the

20    process was not a dead-end, Plaintiff was aware of how to use the process, and he was not

21    thwarted from using the process.

22        Plaintiff knew that the process was not a dead end. Plaintiff exhausted administrative

23    remedies for other unrelated health care grievances prior to the incidents in question, in 2018, and

24    later in the same year, 2019, by submitting a health care grievance at the institutional level and

25    then appealing the institutional level decision to the second, and final, level of review at

26    headquarters. (UF No. 39.) Plaintiff's health care grievance history shows that he is aware of the

27    need to proceed through both levels of review. (DUF No. 40.) The process was not a dead end

28    because Plaintiff was able to use the process for relief and consistently received responses to his

14

1    grievances and appeals.

2            The process was capable of use and Plaintiff was aware of how to use the process.

3    Plaintiff successfully submitted and received institutional level responses for Log Nos. 271 and

4    529. (UF Nos. 28, 35.) Plaintiff's HCARTS shows that Plaintiff submitted approximately 40

5    health care grievances between July 2018 and August 2023. (UF No. 40.) Plaintiff exhausted

6    administrative remedies by appealing the institutional level decision to headquarters for at least

7    20 of those health care grievances between 2018 and 2023. (DUF No. 41.) Thus, Plaintiff was

8    well aware of how to use the process and used it on many occasions.

9            In addition, contrary to Plaintiff's contention, there was still relief available to Plaintiff

10   and he was not and could not have been satisfied by the relief he supposedly received.  The Ninth

11   Circuit has held that a grievance may be exhausted before the final level of review only if no

12   remedies remain available. Brown v. Valoff, 422 F.3d at 935.  But "[t]he obligation to exhaust

13   available remedies persists as long as some remedy remains available." Id. at 935. The narrow

14   cases in which an inmate has no available remedies occur in staff complaint investigations where

15   the inmate has been informed that he will no longer be part of the appeal process. See Brown v.

16   Valoff, 422 F.3d at 935; Bennett v. Bennett, No. C 10-03775 SBA (PR), 2013 U.S. Dist. LEXIS

17   146335, at *10 (N.D. Cal. Sep. 30, 2013) (excessive force staff complaint in which reviewer

18   informed Plaintiff he interviewed officers about their reports); Foster v. Verkouteren, No.

19   08cv0554-CAB, 2009 WL 2485369, at *4-5 (S.D. Cal. Aug. 12, 2009) (plaintiff informed that the

20   issue was being processed as a staff complaint, that an investigation would be conducted, but that

21   all staff personnel matters were confidential); Smith v. Cruzen, No. 14-CV-4791-LMK(PR) at 16,

22   2017 WL 7343445 (N.D. Cal. May 2, 2017) ("partial grant from the second level of review

23   inform[ed] him that an investigation was completed, staff violated policy, and the staff was made

24   aware that the policy was valid"). In these cases, the inmate was excluded from the process going

25   forward. Here, Plaintiff was not excluded from the grievance process. Plaintiff was not precluded

26   from learning the outcome of the health care grievance, nor was any resolution ruled out at the

27   headquarters level. Plaintiff was informed that the grievances received institutional level

28   dispositions of "no intervention" and Plaintiff was advised that if he was dissatisfied with the

1   institutional level dispositions, he needed to submit the entire grievance package for headquarters

2   level review, and that the headquarters level review constituted exhaustion of his administrative

3   remedies. (Gouldy Decl., Exs. The Ninth Circuit made it clear that advising an inmate that there

4   was a further layer of appeal indicated that there were further remedies available. Brown, 422

5   F.3d at 942. Plaintiff had available remedies on appeal at the headquarters level of review and

6   was required to exhaust through that final level of review.

7         Nonetheless, Plaintiff argues that he was satisfied with the relief he was receiving by the

8   time the institutional level responses were delivered to him.  In some situations, it has been

9   determined that an inmate need not appeal if they are satisfied with the relief offered at a lower

10  level of review.  Harvey v. Jordan, 605 F.3d 681, 684-85 (9th Cir. 2010).  An inmate cannot,

11  however, claim to be satisfied with the response at the time of the appeal, then change his mind

12  and sue for the relief denied on the appeal. Id.

13        The undisputed evidence shows that Plaintiff could not have been satisfied with the relief

14  he was offered at the institutional level of review because none was actually offered. (Gouldy

15  Decl. ¶¶ 7-8, Exs. B & C.) The "relief" that Plaintiff refers to in his opposition was not relief

16  offered in response to the relevant grievances. Plaintiff has presented no evidence that the medical

17  care he was receiving while he waited for the institutional level response was in any way related

18  to the grievances.

19        Moreover, Plaintiff cannot now claim he was satisfied with the remedy at the time of the

20  grievances but is now dissatisfied and can sue.  Plaintiff is not required to exhaust further

21  administrative remedies if he is satisfied with the proffered remedy, but the prison fails to provide

22  the remedy. Harvey, 605 F.3d at 685. In Harvey, a prisoner demanded a new disciplinary hearing

23  regarding a cell extraction, and to view a video of his extraction. Id. at 684. The prison granted

24  his appeal. Id. When the prison failed to provide a new hearing or the videotape, the inmate sued.

25  Id. The court held that Harvey need not exhaust further because he was satisfied with the

26  response, and it was not his "responsibility to ensure that prison officials actually provide the

27  relief that they have promised." Id. at 685. Harvey doesn't apply if the inmate sues for relief he

28  was not granted in the grievance. Plaintiff was not granted any relief in response to his

16

1    grievances, therefore any argument relating to his satisfaction with the relief is inapplicable.

2         The institutional response to Log No. 271 specifically stated that although Plaintiff

3    claimed deliberate indifference in the grievance, his disagreement with the medical decisions of

4    his treatment team did not constitute staff misconduct or deliberate indifference. (Gouldy Decl.,

5    Ex. B.)  Plaintiff was specifically not granted any relief related to any deliberate indifference he

6    alleged arose on February 26, 2019. (Id.)  Plaintiff now sues for that relief. Plaintiff cannot sue for

7    relief requested, but not granted in a grievance by now claiming he was satisfied with the relief.

8    See Coles v. Cate, 2:10-cv-1996 KJN P,  2011 WL 6260372, at *5 (E.D. Cal. Dec. 15, 2011); see

9    also Cunningham v. Ramos, No. C 11-0368 RS (PR), 2011 WL 3419502, at *3 (N.D. Cal. Aug.

10   4, 2011) ("plaintiff was not consistent in his assertion of satisfaction"); Kiner v. Yang, 2:19-cv-

11   02178-WBS-JDP (PC), 2021 WL 307557, at *4 (E.D. Cal. Jan. 29, 2021) ("[p]laintiff cannot

12   establish exhaustion through 'mere contention of satisfaction.'")  Plaintiff must be satisfied with

13   all the relief in the grievance. As long as there are unresolved issues, an inmate cannot exhaust at

14   the lower levels of appeal. Brown, 422 F.3d at 941-43.  Even if Plaintiff could claim he was

15   eventually satisfied with the medical care he was receiving for his back pain, Plaintiff cannot

16   claim he was satisfied with any supposed relief for Defendant's alleged deliberate indifference.

17   Indeed, this lawsuit supports a finding that unlike in Harvey, Plaintiff was not "satisfied" by the

18   institutional response.  Plaintiff's appeals did not award relief nor address any deliberate

19   indifference by Defendant Palomino and both were denied with "no intervention."  This is unlike

20   the partial grant in Harvey where the plaintiff was satisfied because he was granted the relief he

21   sought in the form of a hearing and access to view a videotape. Harvey, 605 F.3d at 683.  There is

22   simply not sufficient evidence from which a reasonable fact-finder could find Plaintiff was

23   satisfied with the institutional level decision such that he was not required to proceed to the

24   headquarters' level in order to exhaust his claims within the meaning of the PLRA.

25        Further, Plaintiff's transfer to federal custody did not render his administrative remedies

26   unavailable.  See, e.g., Barroca v. Benov, No. C 01-0004 VRW (PR), 2002 WL 1998273, *3

27   (N.D. Cal. 2003) (holding that a federal inmate's failure to exhaust administrative remedies was

28   not excused where the inmate requested but did not receive grievance forms before he was

                                        17

1    transferred first to a county jail and then to another federal prison, because the inmate still could

2    have filed a timely written grievance but "instead chose not to bother attempting to pursue

3    administrative remedies any further"). Plaintiff did not transfer out of CDCR until October 24,

4    2023, more than four years after the incidents of which he complains. (UF 3-4.)

5        In addition, Plaintiff cannot argue that his transfer to federal custody made him a non-

6    prisoner who was excused from exhaustion under the PLRA. Prisoner, as used in the PLRA and

7    defined in 42 U.S.C. § 1997e(h), "means any person incarcerated or detained in any facility who

8    is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal

9    law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

10   42 U.S.C. § 1997e(h). Because Plaintiff remained in custody, he was a prisoner, and was

11   required to exhaust his administrative remedies. (UF Nos. 1, 7, 8.)

12       Accordingly, Plaintiff failed to satisfy the PLRA exhaustion requirement and Defendant's

13   motion for summary judgment should be granted.

14       2.    Lack of Appeal for March 19, 2019 Interaction

15       Defendant has submitted evidence that Plaintiff did not submit an appeal relating to the

16   March 19, 2019 interaction with Palomino.

17       Plaintiff argues he did not file a grievance for the March 19, 2019 incident, because on

18   that date, Defendant provided the medical treatment Plaintiff wanted. (ECF No. 29 at 23.)

19   Plaintiff submits that he feared a grievance would anger Defendant and cause her to retaliate and

20   refuse medical care in the future. (ECF 29 at 7-8.)

21       "[T]he threat of retaliation for reporting an incident can render the prison grievance

22   process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative

23   remedies." McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015). To show that a threat rendered a

24   grievance system unavailable, a plaintiff must establish both: (1) that he subjectively "believed

25   prison officials would retaliate against him if he filed a grievance" and (2) that this fear was

26   objectively reasonable, that is, 'a reasonable prisoner of ordinary firmness would have believed

27   that the prison official's action communicated a threat ... of sufficient severity to deter a

28   reasonable prisoner from filing a grievance.' Rodriguez v. Cty. of Los Angeles, 891 F.3d 776,

792 (9th Cir. 2018). "[G]eneral and unsubstantiated fears about possible retaliation," cannot establish that plaintiff's fears were objectively reasonable. Rodriguez, 891 F.3d at 794; McBride, 807 F.3d at 987 (holding that a prisoner who was assaulted by guards, who then made threatening statements, nevertheless failed to show an objectively reasonable fear of retaliation because "the statements themselves ma[de] no reference to a grievance or to anything else, beyond the preexisting hostility, that might trigger a future attack on the part of the guards").

Plaintiff's own statements contradict that he subjectively believed Defendant would retaliate against him if he filed a grievance. Even if Plaintiff could establish his subjective belief, Plaintiff cannot establish that his fear was objectively reasonable. Plaintiff acknowledges that Defendant did not threaten to retaliate against Plaintiff for filing a grievance, and Defendant no specific threat or statement implying she would retaliate. (ECF No. 29 at 7.)  Plaintiff submits that his fear was reasonable because of Defendant's prior "repeated denials" of medical treatment over the two months preceding March 19, 2019; and Defendant's alleged anger and denial of medical care on February 26, 2019, after he filed a grievance "against her."  (ECF No. 29 at 7, 13.)

However, there is no evidence that Defendant repeatedly denied Plaintiff medical care in the months preceding March 19, 2019.  For the first time, Plaintiff contends that Defendant Plaintiff's denied him medical care multiple times between January 12, 2019 and February 26, 2019. (ECF No. 29 at 12-13.)  Because Plaintiff did not raise these allegations in his first amended complaint, he cannot now oppose summary judgment by raising grounds not in issue under the pleadings. Wasco Products, Inc. v. Southwall Techs., Inc, 435 F.3d 989, 991 (9th Cir. 2006). On the contrary, Plaintiff's first amended complaint clearly relates to his claims that Defendant was deliberately indifferent in denying care on February 26, 2019, March 19, 2019, and May 6, 2019.  (FAC at 12-13.)

Plaintiff argues that on a prior occasion when he filed a healthcare grievance "against [Defendant]" she "viciously berated" Plaintiff and kicked him out of the medical clinic without treatment on February 26, 2019. (ECF No. 29 at 7, 12.) Thus, Plaintiff says, it is reasonable to conclude she may withhold treatment again if he filed a grievance against her. Plaintiff's own

1    cited evidence undermines this argument. The grievance in question - KVSP HC 19000160 – was

2    submitted on February 15, 2019. (ECF No. 30; Declaration of Laura G. Macfarlane ("Macfarlane

3    Decl."), Ex. A.)  It does not contain any specific allegations against Defendant, nor does it allege

4    specific dates that could have led an investigation to conclude Defendant was involved. (Id.)

5    There is no evidence that the grievance was "against [Defendant]."

6         Further, Plaintiff's own actions and statements belie his claim that he feared retaliation by

7    Defendant if he filed a grievance. Several weeks after his March 19, 2019 interaction with

8    Defendant, at the very time Plaintiff supposedly feared retaliation for raising allegations against

9         Defendant, Plaintiff was interviewed about Log No. 271. (ECF No. 29 at 6, 13-14.)  The

10   interview took place on April 17, 2019, during which Plaintiff identified Defendant as the nurse

11   who allegedly failed to provide medical care on February 26, 2019, and all of the discussion

12   related to Defendant. (Id.)  Thus, it logically follows that if Plaintiff genuinely feared retaliation

13   by Defendant for filing grievances against her, such fear did not extend to other grievances.

14   Indeed, Plaintiff's alleged fear did not deter him from grieving another claim raised herein on

15   May 6, 2019, related to Defendant Palomino's conduct.

16        Accordingly, Plaintiff's general and unsubstantiated fear is insufficient to render the

17   grievance system unavailable, and Plaintiff should not be excused from the exhaustion

18   requirement.  In making this finding, the Court notes that in the operative complaint, Plaintiff

19   stated, in part, "to my recollection, [his grievances] were denied at every level."  (ECF No. 16 at

20   2.)  Plaintiff did not claim that fear of retaliation prevented him from exhausting administrative

21   remedies.  Thus, Plaintiff's operative complaint and submission of the grievances discussed

22   above undermine Plaintiff's claim that he actually believed Defendant would retaliate against him

23   for filing a grievance. Accordingly, the undersigned finds that Plaintiff has not demonstrated that

24   he actually believed that prison officials would retaliate against him if he filed a grievance

25   regarding the March 19, 2019 incident.

26        In sum, the evidence viewed in the light most favorable to Plaintiff demonstrates that he

27   failed to properly exhaust the available administrative remedies prior to filing this action, and

28   Defendant's motion for summary judgment should be granted.

**IV.**

**RECOMMENDATIONS**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    Defendant's motion for summary judgment filed on December 16, 2024, be granted; and

2.    The instant be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 21, 2025**

STANLEY A. BOONE
United States Magistrate Judge

21